# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

ROLAND A. ROSELLO,

     Plaintiff,

v.                                  Case No: 8:19-cv-3027-CEH-CPT

KEATHEL CHAUNCEY ESQ.,
FRESH LEGAL PERSPECTIVE, PL
and RIVERA CHIROPRACTIC, INC.,

     Defendants.

_____/

# O R D E R

This cause comes before the Court upon Defendants Keathel Chauncey, Esq., and Fresh Legal Perspective, PL's ("FLP") Motion for Summary Judgment or Motion for Judgment on the Pleadings (Doc. 29), Plaintiff Roland A. Rosello's response in opposition (Doc. 45), Chauncey and FLP's reply (Doc. 51), Rosello's Amended Motion for Partial Summary Judgment on the Issue of Liability (Doc. 47), and Chauncey and FLP's response in opposition (Doc. 52).

Rivera Chiropractic, Inc., retained Attorney Keathel Chauncey of Fresh Legal Perspective, PL, and sued Roland A. Rosello and Rosello's law firm in state court. As a result of that action, Rosello initiated this action against Rivera Chiropractic, Chauncey, and FLP. Rosello, Chauncey, and FLP now move for summary judgment. For the reasons set forth below, the Court will grant summary judgment in favor of

Chauncey and FLP on Rosello's claims under the Fair Debt Collection Practices Act and decline to exercise supplemental jurisdiction over the state-law claims.

## I.   BACKGROUND

### A. Statement of Facts[1]

Plaintiff Roland A. Rosello is a licensed Florida attorney who is engaged primarily in the practice of personal-injury law. Doc. 50 at 1. Likewise, Keathel Chauncey is a licensed Florida attorney. *Id.* FLP and Chauncey represented Rivera Chiropractic, Inc., in a state-court action, *Rivera Chiropractic, Inc. v. Roland A. Rosello, PL., et al.*, Case Number 19-CA-0033. *Id.* at 2. In that case, Rivera Chiropractic sued Rosello, Roland A. Rosello, P.L., Sierra Holt, and Candice Holt. Doc. 50 at 8–9.

At some time after May 23, 2013, Rosello and Roland A. Rosello, P.L., were retained to represent Sierra Holt with respect to a May 23, 2013 automobile accident and another automobile accident in 2015. *Id.* Sierra Holt sought treatment for her injuries from Rivera Chiropractic. *Id.* Rosello knew that Rivera Chiropractic treated her. *Id.* At the time of the 2013 accident, as well as when she initially sought treatment with Rivera Chiropractic, Sierra Holt was a minor, but she turned 18 during her treatment. *Id.* at 4. During the course of her treatment with Rivera Chiropractic, she

---

[1] The Court has determined the facts, which are undisputed unless otherwise noted, based upon the Stipulation as to Agreed Facts (Doc. 50). The Court has also considered the evidence provided by the parties, including the pleadings, motions, filings, and orders from the state-court action; Rosello's affidavit; Chauncey's affidavit; transcripts of hearings in the state-court action; letters from Rosello; correspondence and papers related to the Florida Bar grievance; and the affidavit of Candice Holt.

incurred bills from Rivera Chiropractic. *Id.* at 2. During Sierra Holt's initial treatment, her mother, Candice Holt, was her mother and legal guardian. *Id.* at 3.

The claim against Rosello in the state-court arose from an original doctor's lien that Candice Holt signed. *Id.* Rosello sent letters to Rivera requesting any doctor's liens or letters of protection, "which was the basis of asserting the claim to Holt's new funds." *Id.* Rosello distributed settlements funds to Sierra Holt at some time in September of 2017. *Id.* Rosello did not disburse any money to Rivera Chiropractic. *Id.*

On or about January 19, 2019, Elliot Rivera retained FLP "in the person of" Chauncey to file a lawsuit on behalf of Rivera Chiropractic. *Id.* With the state court's leave, Rivera Chiropractic filed an amended complaint, which included a doctor's lien as an attachment. *Id.* at 4. On October 2, 2019, Rosello moved to dismiss for fraud-upon-the-court and attached an alternate version of the doctor's lien. *Id.* Rivera Chiropractic then voluntarily dismissed the state-court action. *Id.* As a result, Rosello moved for sanctions under Florida Statutes § 57.105. *Id.* The state court granted Rosello's motion for sanctions. *Id.*

At no point in time before service of the lawsuit upon Rosello did Chauncey or FLP contact Rosello. *Id.* at 5. Rosello knew that Elliot Rivera claimed to be owed money from Sierra Holt's proceeds from her personal-injury cases. *Id.* Rosello disputed the charges that Elliot Rivera was making to Sierra Holt's net funds. *Id.* Rosello sent a letter to Elliot Rivera on July 18, 2017. *Id.*

### B. Rosello's Claims and Procedural Development

3

Rosello now sues Chauncey, FLP, and Rivera Chiropractic. *See* Doc. 1 ¶¶4–6. In his complaint, he brings these claims: (1) a claim for violation of the Florida Consumer Collection Practices Act, Florida Statutes § 559.55 *et seq.*, against Chauncey; (2) a claim for violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692a *et seq.*, against Chauncey; (3) a claim for violation of the FCCPA against FLP; (4) a claim for violation of the FDCPA against FLP; (5) a claim for violation of the FCCPA against Rivera Chiropractic; (6) a claim for abuse of process against Rivera Chiropractic; (7) a claim for abuse of process against Chauncey; (8) a claim for abuse of process against FLP; (9) a claim for malicious prosecution against Rivera Chiropractic; (10) a claim for malicious prosecution against Chauncey; and (11) a claim for malicious prosecution against FLP. *Id.* at ¶¶19–43.[2]

After Rivera Chiropractic filed a suggestion of bankruptcy, Doc. 33 at 1, the Court stayed the action as to Rivera Chiropractic only, Doc. 35 at 1.

Chauncey and FLP now move for summary judgment or, alternatively, judgment on the pleadings (Doc. 29). Rosello moves for summary judgment as to liability (Doc. 47). Both parties have responded (Docs. 45, 52), and Chauncey and FLP have replied (Doc. 51).

## II.   LEGAL STANDARD

Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, with the affidavits, show there is no genuine

---

[2] Rosello labels two claims as "Count 7": the first is the abuse-of-process claim against Chauncey, and the second is the abuse-of-process claim against FLP. Doc. 1 at 19–20.

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the initial burden of stating the basis for its motion and identifying those portions of the record demonstrating the absence of genuine issues of material fact. *Celotex*, 477 U.S. at 323; *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004). That burden can be discharged if the moving party can show the court that there is "an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

When the moving party has discharged its burden, the nonmoving party must then designate specific facts showing that there is a genuine issue of material fact. *Id.* at 324. Issues of fact are "genuine only if a reasonable jury, considering the evidence present, could find for the nonmoving party," and a fact is "material" if it may affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In determining whether a genuine issue of material fact exists, the court must consider all the evidence in the light most favorable to the nonmoving party. *Celotex*, 477 U.S. at 323. But a party cannot defeat summary judgment by relying on conclusory allegations. *See Hill v. Oil Dri Corp. of Ga.*, 198 F. App'x 852, 858 (11th Cir. 2006).[3] Summary judgment should be granted only if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The court

---

[3] Unpublished decisions of the Eleventh Circuit are not binding precedent, but may be cited as persuasive authority. 11th Cir. R. 36-2.

need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

The standard of review for cross-motions for summary judgment does not differ from the standard applied when only one party files a motion, but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed. *Am. Bankers Ins. Grp. v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005). The Court must consider each motion on its own merits, resolving all reasonable inferences against the party whose motion is under consideration. *Id.* "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (quoting *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir. 1975)). Cross-motions may, however, be probative of the absence of a factual dispute where they reflect general agreement by the parties as to the controlling legal theories and material facts. *Id.* at 1555–56.

## III.   DISCUSSION

Rosello bases the Court's subject-matter jurisdiction upon two federal claims: the FDCPA claim against Chauncey (Count II) and the FDCPA claim against FLP (Count IV). Doc. 1 ¶¶7, 22–23, 27–28. These FDCPA claims present the Court with a federal question. *See* 28 U.S.C. § 1331. Rosello premises jurisdiction for the remaining state-law claims upon supplemental jurisdiction under 28 U.S.C. § 1367. Doc. 17 ¶7.

6

Rosello does not allege, separately, diversity jurisdiction. Because the FDCPA claims serve as Rosello's ticket into federal court, the Court begins with those claims.

At the outset, the Court observes that Counts II and IV improperly lump together different claims. Within those counts, Rosello alleges that the conduct of the respective defendant "constitutes violation [sic] of the FDCPA, *to include*, but not necessarily be [sic] limited to, 15 U.S.C. 1692d, 1692e, 1692e(2), 1692e(4), 1692e(5), 1692e(8), 1629e(10), 1692e(11), 1692(f), 1692(l), and 1692f(6)." *Id.* at ¶¶23, 28 (emphasis added).[4] Thus, he pleads violations of distinct sections within Counts II and IV. Sections 1692d, 1692e, and 1692f each provide conduct that constitutes a violation of that section, without limiting the section's application. 15 U.S.C. §§ 1692d, 1692e, 1692f. Rosello cites to §§ 1692d, 1692e, and 1692f again in his summary-judgment filings. Doc. 47 at 13–14; Doc. 45 at 8. As such, the Court construes Rosello's complaint as alleging violations of those sections. Rosello's collective reference to different provisions of the FDCPA does not frustrate or impede the Court's analysis because, as explained below, the record evidence fails to show a necessary element of these sections.

### A. Rosello's Amended Motion for Partial Summary Judgment

The Court begins with Rosello's Amended Motion for Partial Summary Judgment. In seeking summary judgment, Rosello supplies a supporting affidavit (Doc. 47-1) and details the nature of the state-court action. Doc. 47 at 3–11. For the

---

[4] Sections 1692(f) and 1692(l) do not exist. *See* 15 U.S.C. § 1692.

FDCPA claims, Rosello argues that "[d]emanding payment from [him] personally for a debt he was not in any way responsible for and then filing a frivolous Florida Bar grievance, and the filing of the lawsuit against [him], found by the [state] court to be without a basis in law or fact, and filed in bad faith, is conduct in violation of one or more provisions of the FDCPA." Doc. 47 at 14. Despite bringing one FDCPA claim against Chauncey and one FDCPA claim against FLP, Rosello argues that Rivera Chiropractic, Chauncey, and FLP are jointly responsible for the acts of each other and that each of them is "responsible under the theory of vicarious liability for the acts of the other." *Id.* at 14–17.

Chauncey and FLP respond that Rosello cannot establish that they sought to collect a "debt" under the FDCPA.  Doc. 52 at 6–7. They argue that the FDCPA claims fail as a matter of law because Rivera Chiropractic's claim against Rosello in the state-court action sounded in tort. *Id.* at 7. They also highlight that they did not have any contact with Rosello before the initiation of the state-court proceeding, which is undisputed, and that the state-court action lacked any allegations that Rosello was a consumer of Rivera Chiropractic, Chauncey, or FLP, or that services were rendered to Rosello. *Id.* at 6–7.

These arguments warrant a review of the state-court action. As such, the Court undertakes a review of relevant filings in the state-court action before examining the FDCPA claims and applicable law.

> i.  *State-Court Filings and Other Documents*

Rosello, FLP, and Chauncey provide pleadings and filings from the state-court action. As stated above, they agree that Chauncey and FLP represented Rivera Chiropractic in that action.[5]

### 1. Original Complaint

In the original complaint in the state-court action, Rivera Chiropractic alleged that Sierra Holt retained Rivera Chiropractic for chiropractic services related to an accident. Doc. 47-4 at 2.[6] Rivera Chiropractic alleged that Candice Holt, as legal guardian for Sierra Holt, executed a doctor's lien, which provided that Rivera Chiropractic would have a lien against any settlement, claim, judgment, or verdict resulting from the accident. *Id.* According to Rivera Chiropractic, Rosello and Roland A. Rosello, P.L., received the doctor's lien. *Id.* Candice Holt allegedly executed a financial responsibility statement related to Rivera Chiropractic's services, which provided that Candice Holt and Sierra Holt were responsible to pay Rivera Chiropractic if the attorney failed to pay for the rendered services. *Id.* at 3. And Rivera Chiropractic alleged that Rosello and Roland A. Rosello, P.L., received funds on behalf of Sierra Holt; held the funds related to Sierra Holt in the firm's trust account, as required by the Florida Bar; knew that Rivera Chiropractic's services directly related

---

[5] According to Chauncey's affidavit, he was the managing attorney at FLP at all times relevant to this action. Doc. 29-1 at 2.

[6] Chauncey and FLP also provide the original complaint. Doc. 29-2 at 2–10.

to Sierra Holt's resolved case; knew of the doctor's lien; and failed to pay Rivera Chiropractic. *Id.*

In relevant part, Rivera Chiropractic brought a breach-of-fiduciary-duty claim against Roland A. Rosello, P.L., based upon Florida Bar Rule 5-1.1(f), which is entitled "Disputed Ownership of Trust Funds"; and (2) in the alternative, a breach-of-fiduciary-duty claim against Rosello, based upon the same Rule. *Id.* at 3–5.[7] In this alternative claim, Rivera Chiropractic alleged that Rosello had a fiduciary duty related to funds in his trust account; he knew of "a dispute as to the amount owed to [Rivera Chiropractic] relating to" Sierra Holt; and he violated his fiduciary duty by distributing disputed funds that were the subject of the doctor's lien. *Id.* at 5.

### 2. First Amended Complaint and Doctor's Lien

Rivera Chiropractic then filed a first amended complaint (Doc. 47-6).[8] The first amended complaint included as an attachment the doctor's lien that Candice Holt allegedly executed, which allegedly provided Rivera Chiropractic with a lien against any settlement, claim, judgment, or verdict resulting from the accident. Doc. 47-6 at 2, 13. Unlike the original complaint, Rivera Chiropractic alleged that the doctor's lien constituted an assignment of settlement funds in favor of Rivera Chiropractic. *Id.* at 2.

---

[7] Rosello also brought these claims: breach of contract against Candice Holt; breach of contract against Sierra Holt; (5) account stated against Sierra Holt; (6) unjust enrichment against Sierra Holt. Doc. 47-4 at 6–9.

[8] Chauncey and FLP also provide this filing, although the spacing differs from the copy provided by Rosello. Doc. 29-2 at 11–19.

A review of the doctor's lien shows that the document is drafted to be signed by the patient and the "attorney of record or authorized representative of insurance carrier for the above patient." *Id.* at 13. The document provides that, by signing, the patient gives a lien to Elliot M. Rivera, D.C., of Rivera Chiropractic "on any settlement, claim, judgment or verdict as a result [the patient's] accident / illness" and authorizes and directs the patient's "attorney / insurance carrier" to pay directly to Dr. Rivera such sums as may be due and owing him for service rendered" to the patient and "to withhold such sums from settlement, claim, judgment or verdict as may be necessary to protect said doctor adequately." *Id.* Additionally, by signing, the patient acknowledges that she understands that she is responsible to Dr. Rivera for all chiropractic bills submitted by him for service rendered to the patient and that this agreement is made solely for Dr. Rivera's additional protection and in consideration of awaiting payment. *Id.* The signature line for the patient to sign and date the form is blank. *Id.* Underneath, the form provides a signature line for the "attorney of record or authorized representative of insurance carrier for the above patient" to sign to "acknowledge receipt of the above lien" and "agree to honor the same to protect adequately" Dr. Rivera. *Id.* The doctor's lien is addressed to "Roland Rosello" and "Star & Shield" at the top of the page under the heading, "TO: Attorney | Insurance Carrier." *Id.* This copy redacts the date of the accident. *Id.*

Rivera Chiropractic also alleged that Rosello and Roland A. Rosello, P.L.: knew that Rivera Chiropractic provided services to Sierra Holt; received funds relating to a settlement of Sierra Holt's case; received the doctor's lien before receiving the

settlement funds; took possession of the settlement funds; and distributed the settlement funds without affording payments to Rivera Chiropractic. *Id.* at 3. In relevant part, Rivera Chiropractic brought a breach-of-fiduciary-duty claim against Roland A. Rosello, P.L., and a breach-of-fiduciary-duty claim against Rosello. *Id.* at 3–6.[9] In the latter claim, Rivera Chiropractic alleged that Rosello administered the distribution of the settlement funds and knew of both the doctor's lien and a claim against the settlement funds by Rivera Chiropractic for services utilized during Rosello's representation of Sierra Holt. *Id.* at 4–6. Rivera Chiropractic alleged that Rosello owed it a fiduciary duty: (1) in the administration of the settlement funds relating to the doctor's lien; and (2) in the administration of the settlement funds relating to the utilization of Rivera Chiropractic's services in representing Sierra Holt. *Id.* at 5. According to Rivera Chiropractic, Rosello breached the fiduciary duty by failing to exhibit reasonable skill and ordinary diligence in holding and distributing the settlement funds. *Id.*

### 3.  Second Amended Complaint

After the state court dismissed the first amended complaint, Doc. 45-8 at 1, Rivera Chiropractic filed a second amended complaint (Doc. 46-8).[10] In the second

---

[9] Rivera also brought these claims in the first amended complaint: breach of contract against Candice Holt; breach of contract against Sierra Holt; account stated against Sierra Holt; and unjust enrichment against Sierra Holt. Doc. 47-6 at 6–9.

[10] Rosello provides this document as an exhibit to an affidavit that is identical to the affidavit attached to his Amended Motion for Partial Summary Judgment (Doc. 46-8). Chauncey and FLP provide this document, too. Doc. 29-2 at 20–33.

amended complaint, Rivera Chiropractic alleged that Sierra Holt, together with Candice Holt, engaged Rivera Chiropractic to provide chiropractic services to Sierra Holt pertaining to the accident. Doc. 46-8 at 2. In Count I, Rivera Chiropractic brought a breach-of-fiduciary-duty claim against Roland A. Rosello, P.L., now alleging that Candice Holt executed a doctor's lien on behalf of Sierra Holt, as the authorized representative of Sierra Holt, and that the doctor's lien identified Sierra Holt by the date of the accident listed on the lien. *Id.* at 3. Rivera Chiropractic attached the doctor's lien from the first amended complaint to the second amended complaint. *Id.* at 12. According to Rivera Chiropractic, the doctor's lien gave Rivera Chiropractic rights to any settlement, claim, judgment or verdict as a result of the accident. Roland A. Rosello, P.L., allegedly knew about the doctor's lien. *Id.* at 3. According to Rivera Chiropractic, Roland A. Rosello, P.L., owed a fiduciary duty to Rivera Chiropractic under the rights granted to Rivera Chiropractic in the doctor's lien. *Id.* at 4. And Roland A. Rosello, P.L., who allegedly knew that Rivera asserted claims against the settlement funds before distributing those funds and failed to provide for Rivera Chiropractic's claims in distributing the funds, breached its fiduciary duty to Rivera Chiropractic by failing to protect Rivera Chiropractic's rights to the settlement funds, as set forth in the doctor's lien. *Id.*

In Count II, Rivera Chiropractic brought a breach-of-fiduciary-duty claim against Rosello "in the alternative that [Rosello] received the [s]ettlememt [f]unds individually." *Id.* at 5. The allegations for the claim under Count II were nearly identical to those for the claim against Roland A. Rosello, P.L., in Count I, except that

Rivera Chiropractic directed the allegations against Rosello. Thus, Rivera Chiropractic alleged that Rosello owed Rivera Chiropractic a fiduciary duty under the rights granted to Rivera Chiropractic in the doctor's lien and that Rosello breached that duty by failing to protect Rivera Chiropractic's rights to the settlement funds, as set forth in the doctor's lien, which was known to Rosello before accepting the settlement funds. *Id.* at 5–6.

The parties agree that Rivera Chiropractic voluntarily dismissed the state-court action, and Rosello provides a copy of the notice of voluntary dismissal (Doc. 47-12).

### 4.  Other Records

Rosello also provides two letters that he sent to Dr. Elliot Rivera. In the first letter, which is addressed to "Dr. Rivera D.C.," directed to "Billing Manager," and dated June 14, 2017, Rosello advised the "Billing Manager" that he had forwarded the bills to his client to review, but that he needed the Billing Manager's contract with Humana, PIP payments listed by date and amount, any letter of protection signed by Sierra Holt, and any letter of protection signed by Rosello. Doc. 47-2 at 1. Rosello advised that he was not optimistic that he and the Billing Manager would "come to an agreement" about the outstanding balance of $43,652.12. *Id.*

The second letter, dated July 18, 2017, is addressed to Dr. Rivera. Doc. 47-3. There, Rosello advised Dr. Rivera: "Despite our best efforts, we are unable to resolve the unpaid bills with the providers," resulting in a situation where "your patient has requested distribution of the settlement proceeds directly to her." *Id.* Rosello further advised: "[W]e are making a final effort to deal with your bills before disbursement of

the funds. My client has extended to you a final offer of $1,750.00 in return for a final satisfaction of all charges on her account. Send your acceptance in writing or the following procedures and the offer is withdrawn." *Id.* Next, the letter provided:

> I have told the client that I will hold the funds for thirty (30) days from the date of this letter to either negotiate an agreement regarding the settlement proceeds or for any party to file a lawsuit to determine the disbursement of the settlement funds. Whoever files the appropriate lawsuit **MUST NAME ME, ROLAND A. ROSELLO, P.L.,** as a part of the suit as the holder of the funds at issue.
>
> If I am not served with the lawsuit and summons naming me as the holder of the funds within thirty (30) days of the date of this letter, I will disburse the settlement proceeds in accordance with the client's directives.

*Id.* (emphasis in original). Rosello states that he did not receive a response within 30 days. Doc. 47-1 at 7.[11]

Finally, in his accompanying affidavit, Rosello points to an affidavit from Candice Holt, which he cites for the proposition that Candice Holt signed a "blank" doctor's lien and someone at Rivera Chiropractic filled in the information. Doc. 47-1 at 9. In that affidavit, Candice Holt addresses two versions of the doctor's lien discussed above. Doc. 46-17 at 1.[12] The first version, attached thereto as "Exhibit A,"

---

[11] Chauncey and FLP argue that the Court should not consider this assertion, or any other assertion within paragraph 13 of Rosello's affidavit, because Rosello's "affidavit is filled with legal opinions that are guised as 'personal knowledge' and he "is not an expert" Doc. 52 at 2. This argument is unpersuasive as to this particular statement.

[12] Rosello's affidavit, attached to the Amended Motion for Partial Summary Judgment, cites to "Exhibit 17" for the proposition that Candice Holt signed this affidavit. Doc. 47-1 at 9. Rosello fails to provide an "Exhibit 17" with his Amended Motion for Partial Summary Judgment; however, he attaches Holt's affidavit as "Exhibit 17" to an identical copy of his affidavit that he filed, along with accompanying exhibits, on the same day as his amended response and Amended Motion for Partial Summary Judgment. Doc. 46-17 at 1.

is identical in form to the doctor's lien discussed above, but it is not addressed to "Roland Rosello" and "Star & Shield" at the top and the date of the accident is blank. Doc. 46-17 at 2. Like the version discussed above, the signature line for the patient to sign and date is blank and Candice Holt signed on the signature line for "attorney of record or authorized representative of insurance carrier for the above patient." *Id.* The second version, attached to Candice Holt's affidavit as "Exhibit B," is identical to the doctor's lien described above, except that the accident date is unredacted and indicates that the accident occurred on May 23, 2013. *Id.* at 3. The parties agree that Sierra Holt's first accident occurred on that date.

In her affidavit, Candice Holt states that she was presented with the "Exhibit A" version, without any writing on it, and told to sign it without Dr. Rivera explaining the nature of the form or why it was blank. *Id.* at 1. She also states that she "did not make" the "changes" to the "Exhibit B" version and that the date of the accident is not written in her handwriting. *Id.*

### ii. FDCPA Claims

Having reviewed these state-court action pleadings and accompanying documents, the Court turns to the FDCPA claims. As stated above, Rosello argues in his Amended Motion for Partial Summary Judgment that Chauncey and FLP violated 15 U.S.C. §§ 1692d, 1692e, and 1692f. First, § 1692d, entitled "Harassment or abuse," provides: "A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Similarly, § 1692e, entitled "False or misleading

representations," provides: "A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e.[13] And § 1692f, entitled "Unfair practices," provides: "A debt collector may

---

[13] Rosello's complaint cites to the following subsections of § 1692e, each of which constitutes a violation of the section:

> (2) The false representation of--
>     (A) the character, amount, or legal status of any debt; or
>
>     (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.
>
>                     . . .
>
> (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
>
> (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.
>
>                     . . .
>
> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.
>
>                     . . .
>
> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
>
> (11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the

17

not use unfair or unconscionable means to collect or attempt to collect any debt." *Id.* § 1692f.[14] Rosello offers little argument for the applicability of these sections, contending only that "[d]emanding payment" from him "personally for a debt" for which he was not responsible, "then filing a frivolous Florida Bar grievance," and the filing of the state-court action against him "in bad faith" constitutes "violation of one or more provisions of the FDCPA." Doc. 47 at 14.

Each of these provisions prohibits certain actions of a "debt collector." The FDCPA defines "debt collector," in relevant part, as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts

---

> communication is from a debt collector, except that this paragraph shall not apply to a formal pleading made in connection with a legal action.

15 U.S.C. § 1692e.

[14] Rosello's complaint cites to § 1692f(6), which provides that the following conduct constitutes a violation of the section:

> Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if--
>
> > (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
> >
> > (B) there is no present intention to take possession of the property; or
> >
> > (C) the property is exempt by law from such dispossession or disablement.

15 U.S.C. § 1692f(6).

to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, "a party may qualify as a 'debt collector' either by using 'an instrumentality of interstate commerce or the mails' in operating a business that has the principal purpose of collecting debts or by 'regularly' attempting to collect debts." *Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218 (11th Cir. 2012). The FDCPA "applies to attorneys who 'regularly' engage in consumer-debt-collection activity, even when that activity consists of litigation." *Heintz v. Jenkins*, 514 U.S. 291, 299 (1995) ("In ordinary English, a lawyer who regularly tries to obtain payment of consumer debts through legal proceedings is a lawyer who regularly 'attempts' to 'collect' those consumer debts."); *see Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1298 (11th Cir. 2015) (explaining that *Heinz* recognized that the FDCPA applied to the litigating activities of debt-collector lawyers and that the holding "aligned" with the FDCPA's definition of "debt collector").

Here, Rosello provides no evidence that FLP and Chauncey used "any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts" or that FLP and Chauncey "regularly" collect or attempt to collect debts due or asserted to be owed or due another. In his Amended Motion for Partial Summary Judgment, Rosello argues that Chauncey and FLP "are subject to the FDCPA in that they used the instrumentalities of interstate commerce, or the mails, in their business and their principal purpose is the collection of any debts, or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." Doc. 47 at 9. Although he fails

19

to cite to any supporting evidence, his affidavit contains the same language. Doc. 47-1 at 11. But this language, which simply parrots the definition for "debt collector," is a legal conclusion devoid of facts. The parties agree that neither Chauncey nor FLP contacted Rosello before service of the state-court action. The evidence shows that Rivera Chiropractic retained Chauncey of FLP to file the state-court action, which included only breach-of-fiduciary-duty claims against Rosello and his law firm, but also other claims against Candice Holt and Sierra Holt. Rosello points to no facts showing that Chauncey and FLP: (1) used the instrumentalities of interstate commerce, or the mails, in their business and their *principal purpose* was the collection of any debts; or that they (2) *regularly* collect or attempt to collect debts. Because Rosello fails to provide evidence that Chauncey or FLP qualify as "debt collectors" under the FDCPA, he is not entitled to summary judgment on his FDCPA claims. As such, the Court will deny the Amended Motion for Partial Summary Judgment.

Assuming, for argument's sake, that Rosello could demonstrate—with evidence—that Chauncey and FLP qualify as "debt collectors" under the FDCPA, Rosello also fails to demonstrate the existence of a "debt" under the FDCPA. The FDCPA defines "debt" as meaning "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). As such, the Eleventh Circuit has explained that this language "limits application of the FDCPA to debts arising from

*consumer* transactions." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1371 (11th Cir. 1998) (emphasis in original).

While not every "consensual or business dealing constitutes a 'transaction'" that triggers the FDCPA, "at a minimum, a 'transaction' under the FDCPA must involve some kind of business dealing or other consensual obligation.'" *Id.* "In other words, when we speak of 'transactions,' we refer to consensual or contractual arrangements, not damage obligations thrust upon one as a result of no more than her own negligence." *Id.* "[E]ven an 'alleged obligation' must purportedly arise out of a 'transaction' where 'the subject of the transaction' is 'primarily for personal, family, or household purposes.'" *Parham v. Seattle Serv. Bureau, Inc.*, 656 F. App'x 474, 477 (11th Cir. 2016). And an alleged obligation that arises from a tort will not suffice as a "consumer transaction." *Hawthorne*, 140 F.3d at 1371. For example, in *Hawthorne*, the Eleventh Circuit held that Hawthorne's alleged obligation to Mac Adjustment arose out of a tort, not a consumer transaction. *Id.* "In conducting herself in an allegedly negligent manner that precipitated the accident, Hawthorne engaged in no consumer transaction. She neither purchased nor used goods or services." *Id.* As such, Hawthorne could not "transform [her] payment obligation arising out of an accident into a consumer transaction." *Id.*

Here, Rosello claims that Chauncey and FLP, as debt collectors: harassed, oppressed, or abused him in connection with the collection of a debt; used a false, deceptive, or misleading representation or means in the collection of a debt; and used unfair or unconscionable means to collect or attempt to collect a debt. But, viewing

the evidence in the light most favorable to Chauncey and FLP, Rosello does not establish the "consumer transaction" needed for the "debt." The record does not show that Rosello, as a "consumer," was a party to a "transaction" with Rivera Chiropractic, Chauncey, or FLP that gave rise to an obligation or an alleged obligation. Chauncey, as the managing attorney at FLP, represented Rivera Chiropractic in the state-court action, which included a breach-of-fiduciary-duty claim against Rosello. The parties agree that neither Chauncey nor FLP contacted Rosello before service of the state-court action.

In his affidavit, Rosello states that "the debt claimed due" from him by Chauncey and FLP "is a consumer debt within the meaning of the FDCPA . . . as [t]he alleged debt was for an obligation, or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or services that was the subject of the transaction was primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment, i.e., charges for chiropractic services." Doc. 47-1 at 10. Again, this statement merely parrots the statute, repeats the definition of "debt" and tacks on "i.e., chiropractic services." A "debt" under the FDCPA means any obligation or alleged obligation that arises from a "transaction." Even if Rosello contends that Chauncey or FLP sought money for "chiropractic services," this statement neither addresses a "transaction" nor provides facts showing the existence of a "transaction."

Further, as discussed above, Rosello sent letters to Dr. Rivera, the first of which requested further documentation as to the services provided to Sierra Holt in the

context of her incurred bills, and the second of which explained that Rosello's client offered to settle the bills and stated that any lawsuit "to determine the disbursement of the settlement funds" needed to "name me, Roland A. Rosello, P.L., as part of the suit as holder of the funds at issue." Doc. 47-3 at 1 (original emphasis removed). Neither of these letters constitutes some type of business dealing, consensual obligation, or a consensual or contractual arrangement.[15] Further, although the parties agree generally that Dr. Rivera claimed that he was owed money from Sierra Holt's proceeds and that Rosello disputed Dr. Rivera's claim to entitlement to Sierra Holt's proceeds, the fact that Dr. Rivera claimed that he was owed money does not show some type of business dealing, consensual obligation, or a consensual or contractual arrangement.[16]

Turning to the doctor's lien, Rivera Chiropractic's breach-of-fiduciary-duty claims against Rosello in each of the three complaints arose from the doctor's lien.[17] For example, in the original complaint, Rivera Chiropractic alleged that Candice Holt

---

[15] The parties agree to the fact that "Rosello sent letters to Rivera requesting any doctor's liens or letters of protection which was the basis of asserting the claim to Holt's net funds," but this fact does not establish any type of business dealing, consensual obligation, or a consensual or contractual arrangement. Further, citing to "Letter confirming Rivera's claim to a disputed debt by letter dated June, 2017," Rosello states in his affidavit that Rivera Chiropractic billed $43,652.12 for its services "and was paid"—Rosello does not specify by whom—$17,300. Doc. 47-1. Chauncey and FLP object to this statement. Doc. 52 at 2. But even if the Court considers the statement, it does not show some type of business dealing, consensual obligation, or a consensual or contractual arrangement.

[16] Further, Rosello's argument in passing that Chauncey and FLP violated the FDCPA because Dr. Rivera, who is not a party to this action, filed a "frivolous Florida Bar grievance" is unpersuasive.

[17] Indeed, the parties agree that the claim against Rosello arose from the doctor's lien that Candice Holt signed.

executed a doctor's lien that provided Rivera Chiropractic with a lien against any settlement, claim, judgment, or verdict resulting from the accident, that Rosello received the doctor's lien, and that Rosello violated his fiduciary duty by distributing disputed funds that were the subject of the doctor's lien. Similarly, in the first amended complaint, Rivera Chiropractic alleged that the doctor's lien constituted an assignment of settlement funds in favor of Rivera Chiropractic, that Rosello knew of both the doctor's lien and Rivera Chiropractic's claim against the funds for services, that Rosello owed a fiduciary duty to Rivera Chiropractic in the administration of the settlement funds relating to the doctor's lien, and that Rosello breached that fiduciary duty by failing to show reasonable skill and ordinary diligence in holding and distributing the funds. And in the second amended complaint, Rivera Chiropractic alleged that the doctor's lien gave Rivera Chiropractic rights to any settlement, claim, judgment, or verdict resulting from the accident, that Rosello owed a fiduciary duty under the rights granted to Rivera Chiropractic in the doctor's lien, and that Rosello breached that duty by failing to protect Rivera Chiropractic's rights to the settlement funds, as set forth in the doctor's lien.

Again, any obligation or alleged obligation on behalf of Rosello must arise from a "transaction." Rivera Chiropractic alleged in the state-court action that Rosello was obligated to pay proceeds. But the doctor's lien does not demonstrate a "transaction" giving rise to an obligation or alleged obligation of Rosello. Although one version of the doctor's lien is addressed to "Roland Rosello," the purpose of the document is simply for the patient to give Dr. Rivera a lien on any settlement, claim, judgment, or

verdict arising out of the accident and for the "attorney of record or authorized representative of insurance carrier" to acknowledge and honor the lien. To that end, the document provides a signature line for the patient and a signature line for the "attorney of record or authorized representative of insurance carrier for the above patient." Neither version of the lien in the record displays Rosello's signature. In both versions of the lien, Candice Holt signed on the signature line for the attorney of record or authorized representative of the patient. In both versions of the lien, the signature line for the patient is blank. The lien does not show some type of business dealing, consensual obligation, or a consensual or contractual arrangement that gave rise to an obligation or alleged obligation of Rosello. And Rosello does not point to any other evidence constituting a "transaction."

Rosello fails to provide evidence of a "transaction" under the FDCPA's definition of "debt."[18] As such, the Court will deny the Amended Motion for Partial Summary Judgment.

### B. Chauncey and FLP's Motion for Summary Judgment or Motion for Judgment on the Pleadings

The Court next turns to Chauncey and FLP's Motion for Summary Judgment or Motion for Judgment on the Pleadings. Although Chauncey and FLP move for judgment on the pleadings in the alternative, the Court will proceed under Rule 56, Fed. R. Civ. P., because the summary-judgment standard allows the Court to look

---

[18] Having concluded that Rosello is not entitled to a partial summary judgment, the Court need not address Rosello's arguments for "joint responsibility" and vicarious liability.

beyond the pleadings and to conduct a thorough review of the submitted evidence, unlike the standard for motions for judgment on the pleadings.

The parties repeat many of their arguments from above here. In seeking summary judgment on the FDCPA claims, Chauncey and FLP argue that those claims fail as a matter of law because Chauncey and FLP were not collecting a "debt" under the FDCPA from Rosello. Doc. 29 at 16. They point out that they represented Rivera Chiropractic in the state-court action, which involved a breach-of-fiduciary duty claim against Rosello. *Id.* at 9. They contend that Rosello's "involvement" was based upon "his alleged violation of his fiduciary duty as an escrow agent in failing to properly distribute funds he held in escrow." *Id.* at 9–10. They argue that they cannot be liable as a matter of law under the FDCPA for bringing a tort claim against Rosello. *Id.* at 10. They also highlight that the state-court action lacked any allegations that Rosello was a consumer of Rivera Chiropractic, Chauncey, or FLP, or that services were rendered to Rosello. *Id.* at 9.

In response, Rosello argues that he was the "object of collection activity arising from a consumer debt" because "[m]edical debt falls within the broad definition of 'debt' under the FDCPA, the filing of a lawsuit constitutes debt-collection activity, and lawyers may be held responsible under the FDCPA for their conduct during the course of litigation. Doc. 45 at 7–8. Finally, he argues that he "falls within the category of people protected under the FDCPA," as he qualifies as a 'consumer' under the FDCPA, and both Chauncey and FLP "were trying to collect a consumer debt from

the wrong person as found by the [state] court." *Id.* Rosello again provides his affidavit (Doc. 46), along with other evidence.

In addition to attacking Rosello's affidavit, Chauncey and FLP reply that Rosello fails to provide any evidence that they were attempting to collect a "debt" from him and that the sole claim against Rosello in the state-court action was for breach of fiduciary duty. Doc. 51 at 2–4, 6.

The Court agrees with Chauncey and FLP that the evidence fails to show that they were collecting a "debt" from Rosello. As discussed above extensively, a "debt" under the FDCPA means an obligation or alleged obligation of a consumer to pay money arising out of a "transaction," which must involve some kind of business dealing or other consensual obligation. As Chauncey and FLP point out, a "transaction" refers to a consensual or contractual arrangement, rather than damage obligations thrust upon another as a result of her own negligence. *Hawthorne* highlights that an alleged obligation arising from a tort will not suffice as a "consumer transaction." 140 F.3d at 1371. In Florida, a claim for breach of fiduciary duty sounds in tort. *See LeBlanc v. Acevedo*, 258 So. 3d 555, 557 (Fla. 5th DCA 2018).

But regardless of whether the obligation or alleged obligation here arises from a tort, the Court agrees with Chauncey and FLP that the evidence, when viewed in the light most favorable to Rosello, does not show that Chauncey and FLP sought to collect a "debt" under the FDCPA. For the reasons discussed above, the letters from Rosello do not demonstrate some type of business dealing, consensual obligation, or a consensual or contractual arrangement. The fact that Dr. Rivera claimed that he was

owed money does not, either. And for all of the reasons outlined above, the doctor's lien does not show some type of business dealing, consensual obligation, or a consensual or contractual arrangement that gave rise to an obligation or alleged obligation of Rosello.[19]

In his response, Rosello sets forth the definition of "debt" and cites to *Hawthorne*, but fails to provide evidence of a "transaction." Doc. 45 at 10. Instead, he argues that Chauncey and FLP mistakenly argue that the "debt" definition "excludes liability when they attempt to collect from the wrong person." *Id.* (internal quotation marks omitted). But this argument does not address the requisite "transaction." Similarly, Rosello's argument that he "falls within the category of people protected under the FDCPA" because he qualifies as a "consumer" merely cites to the definition of "consumer" under the statute and does not point to any evidence or argument about the needed "transaction." *Id.* at 12.[20] As discussed above, Rosello states in his accompanying affidavit that "the debt claimed due" from him by Chauncey and FLP "is a consumer debt within the meaning of the FDCPA . . . as [t]he alleged debt was for an obligation, or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance or service that was the subject of

---

[19] Rosello describes the doctor's lien as "defective" and "completely bogus on its face" in his response. Doc. 45 at 4, 9.

[20] As for Rosello's argument that the filing of a lawsuit constitutes debt-collection activity and that lawyers "are held responsible under the FDCPA for their conduct during the course of litigation," this argument goes towards whether Chauncey and FLP qualified as "debt collectors" under the FDCPA. Doc. 45 at 7–8. The Court addressed the "debt collector" definition above.

the transaction was primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment, i.e., charges for chiropractic services." Doc. 46 at 10. Again, this statement simply repeats the definition of "debt," tacks on "i.e., chiropractic services," and fails to offer any evidence addressing the needed "transaction." And Rosello otherwise fails to point to any evidence tending to show a "transaction." As such, there is no genuine issue of material fact that a "transaction" is absent. Therefore, Chauncey and FLP did not seek to collect a "debt" under the FDCPA. Chauncey and FLP are entitled to judgment as a matter of law on the FDCPA claims.

Finally, because the Court will enter summary judgment in favor of Chauncey on Count II and in favor of FLP on Count IV, only state-law claims remain. "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988). Therefore, the Court will decline to exercise its supplemental jurisdiction over these remaining claims. *See* 28 U.S.C. § 1367(c)(3) ("[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction.").[21] As such, the Court will dismiss the state-law claims, without prejudice.

---

[21] "The period of limitations for any claim asserted under subsection (a) [establishing supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Plaintiff Roland A. Rosello's Amended Motion for Partial Summary Judgment on the Issue of Liability (Doc. 47) is **DENIED**.

2. Defendants Keathel Chauncey, Esq. and Fresh Legal Perspective, PL's Motion for Summary Judgment or Motion for Judgment on the Pleadings (Doc. 29) is **GRANTED** to the extent that the Court grants summary judgment to Keathel Chauncey, Esq., on Count II and grants summary judgment to Fresh Legal Perspective, PL, on Count IV.

3. The Clerk is directed to enter **JUDGMENT** on Count II (FDCPA) in favor of Defendant Keathel Chauncey, Esq., and against Plaintiff Roland A. Rosello.

4. The Clerk is directed to enter **JUDGMENT** on Count IV (FDCPA) in favor of Defendant Fresh Legal Perspective, PL, and against Plaintiff Roland A. Rosello.

5. The Court declines to exercise supplemental jurisdiction over Count I (FCCPA against Keathel Chauncey), Count III (FCCPA against Fresh Legal Perspective), Count V (FCCPA against Rivera Chiropractic),

---

days after it is dismissed unless State law provides for a longer tolling period." 28 U.S.C. § 1367(d). Section 1367(d) "protects plaintiffs who choose to assert supplemental state-law claims in a federal action. If the court declines to exercise supplemental jurisdiction over those claims, the plaintiff may assert them in a new action in state court without fear of being barred by the statute of limitations. This obviously protects plaintiff when state law might not have provided for tolling during the pendency of the federal-court case." 13D Charles Alan Wright et al., *Federal Practice & Procedure* § 3567.4, 458–59 (3d ed. 2008).

Count VI (Abuse of Process against Rivera Chiropractic) Count VII (Abuse of Process against Keathel Chauncey), Count VII (Abuse of Process against Fresh Legal Perspective), Count VIII (Malicious Prosecution against Rivera Chiropractic), Count IX (Malicious Prosecution against Keathel Chauncey), and Count X (Malicious Prosecution against Fresh Legal Perspective). These claims are **DISMISSED**, **without prejudice**.

6. The Clerk is directed to terminate all deadlines and to **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 31, 2022.

*Charlene Edwards Honeywell*

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any